The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning. Judge Graber, Judge D'Alba, and I would like to welcome you to the Ninth Circuit. We have one case set for argument this morning, Laird v. Thornell. And each side will have 15 minutes. Please keep your own time, but let us know if you'd like to reserve any time for rebuttal. And we'll start with Mr. Hilzendecker. Thank you. Good morning, Your Honors. May it please the Court, my name is Keith Hilzendecker. I'm an assistant federal public defender in Phoenix. I'm representing the petitioner in this case, Kenny Laird. I feel like I'm talking a little bit loudly. It's perfect, actually. It's perfect. We can hear you well. And I will try and save three minutes for rebuttal, if I may. As a matter of clearly established federal law, it violates the Eighth Amendment to sentence a juvenile homicide offender to life imprisonment without the possibility of release on parole, without first considering whether the juvenile is capable of rehabilitation. Here, the state court ruled contrary to this clearly established law by deciding that the Eighth Amendment simply didn't apply to Mr. Laird's sentence, even though the sentence indisputably leaves him with no opportunity for release on parole during his lifetime. And at neither sentencing hearing in his case, the judge did not have discretion to consider Mr. Laird's prospects for rehabilitation. The district court therefore erred in denying Mr. Laird's habeas petition. This court should reverse and remand with instructions to grant it. So I recognize that the court held this case to wait for Helm. Helm very helpfully lays out kind of a two-step framework for analyzing questions like this and specifically decided how the 2254D analysis should apply to a claim like this. Mr. Laird's Eighth Amendment claim was processed in much the same way as Mr. Helm's was by the Arizona State Courts. And so I'm happy to start with either end of the analysis. I guess one question that I have is, in practical terms, what difference would it make because of the number of convictions? I think that the calculation, if I recall it correctly from the sentencing hearing, was that if every single sentence were to run concurrently, the sentence would still be 116 years, which is less than 129 and less than whatever, but is still beyond the lifespan of almost all human beings. Your Honor, if I may, that number in the transcript of the resentencing hearing is based on the assumption that the sentences for the non-homicide crimes were not affected at that point. It was the judge's approach to the hearing that the only question he had to decide after Mr. Laird's death sentence was vacated was whether to run what then had to be a 25-to-life sentence, either concurrently with or consecutive to the aggregate sentence of 129 years on the other non-capital crimes. But the court had discretion and always knew that it had discretion to run those other sentences concurrently or consecutively, correct? Well, I don't believe that it did, Your Honor. Well, it did have discretion, right, under the law? The judge said at the 2005 hearing that the only question he was considering was whether to make the sentences concurrent, which suggests to me... That he knew he could. Well, that he knew he could make the murder sentence consecutive to this other part of the sentence that was unchanged. It had been unchanged since he imposed it in 1994. Counsel, I'm kind of reviewing my notes about that, and at that 2005 hearing, the sentencing judge commended Mr. Laird's counsel at that time about what a great job he did presenting mitigating evidence, and he stated, and I quote, that might have tipped the scales for him to a life sentence. However, the judge states, I can't imagine I would have given him concurrent sentences. I don't see any reason to give him concurrent. So he did know, and he made an active choice not to give concurrent sentences and rather give consecutive sentences. And, in fact, if I remember correctly, weren't some of the sentences given concurrently? In the package of sentences for the non-homicide crimes, a couple of those sentences do run concurrently. But I read that statement that you're quoting, Your Honor, from the 2005 hearing as directed at the only question the judge thought was before him, which was not to reformulate the entire sentencing package, to reopen the entire sentencing package, but rather to decide whether the murder sentence should run consecutively with or concurrent to that other part of the sentence that he was treating as being frozen in amber. Do you think Jones requires the court to do anything else?  What? Grant the writ and tell the State to either release or resentence Mr. Jones. I'm sorry, Mr. Laird. Because the judge never had the discretion that Jones says he should have. And Jones admittedly says that, you know, the usual sentencing discretion that every judge has in state and federal courts throughout the country is both necessary and sufficient to satisfy Miller. But the judge must have that discretion in the first instance. And here he artificially limited his discretion by saying, I'm not reopening the entire sentencing package. I'm just considering what to do with the sentence on the murder count because the death sentence that he had previously imposed had been ruled unconstitutional. That is the basic, basic, those are the basic components of my argument on the merits of the Eighth Amendment claim. That in 1994 when the death penalty was on the table and the judge was operating under Arizona's capital sentencing law, he couldn't consider Mr. Laird's prospects for rehabilitation because state law prohibited him from doing so because that fact, those factors, has no connection to the crime. And this court has recognized in McKinney v. Ryan that a causal nexus requirement like that violates the Eighth Amendment and the death penalty sentencing context. In 2005, like I've said and as we've just discussed, the judge artificially limited his own discretion by saying the only question in front of me is whether to make the sentence on the murder count concurrent or consecutive, concurrent with or consecutive to the sentence on the other counts that he had imposed, the total package of which had been frozen in amber. And it doesn't seem like there's any more questions along those lines, so. Well, I actually do have one more question. I take it that the transcript of the 1994 sentencing is not available. Is that correct? Your Honor, I'm not sure that it's not available. I would venture to guess, frankly, that it is available. Well, if it is and you have the burden to demonstrate that the court thought it could not consider age or the prospects of rehabilitation, why isn't its absence something that counts against your client? Because Mr. Laird had a death sentence. It was subject to independent review by the Arizona Supreme Court. And the Arizona Supreme Court did review it, and it did consider whether Mr. Laird's age and maturity could be a mitigating factor. But again, the Arizona Supreme Court was operating under its own case law, which said age and maturity or lack thereof are not a mitigating factor unless there is a causal connection to the crime. That's cited in the Jimenez case that I cited in my briefs. It's also cited in the cases that the Arizona Supreme Court cited in its opinion affirming Mr. Laird's death sentence on direct review. That, because there's an independent sort of — there's an independent — there's an independent obligation by the Arizona Supreme Court to reassess the propriety of the death sentence on direct appeal. Frankly — But you're saying that the hearing transcript wouldn't matter? Is that what you're saying? Yes. I'm saying that this is an adequate substitute. I mean, I think it's in our office file on this case, and I would happily provide it to the court. But if it's a burden problem, Your Honor, I — candidly, I didn't put it in the record. I'm happy to move on to the 2254D question, which I have contended is not controlled at all by Helm because of the way that the court in Helm decided to adjudicate Mr. Helm's Eighth Amendment claim. Mr. Helm made at least a similar, if not a pretty much identical, argument to the argument that I'm making here, which is that the aggregate length of the sentence and how it has any Eighth Amendment scrutiny, that's clearly established law. It's clearly established that if you sentence a juvenile to life without parole or any other kind of sentence that's the functional equivalent of that, such as a sentence of 129 years where there's no possibility at all of release on parole, whether or not it had been abolished, that's contrary to clearly established federal law. And that's what allows this court to get around the 2254D1 limitation on relief and proceed to the merits of Mr. Laird's Eighth Amendment claim. I'm sort of pausing for questions, but if there are no questions on that aspect of it, I would like to reserve the balance of my time for rebuttal. All right. Thank you, Counsel. May it please the Court, my name is Tanya Kelly. I represent Ryan Thornell in the state of Arizona. First of all, I think it's important to understand the factual context. I'm just going to jump into, although the position is that there is no clearly established law that a juvenile homicide offender who receives non-homicide offenses that are de facto life sentences, that would be unconstitutional, would be subject to Miller. But just the factual context, Laird was sentenced to death. He committed these crimes when he was 17 years and five months. He was sentenced to death, and he committed a host of other crimes related to that murder. And the court that they had, especially because it was a death penalty, there was a mitigation hearing. There were psychiatrists involved. Age is a statutory mitigating factor on the death sentence. We don't have the transcript, but the Arizona Supreme Court's review of it specifically talks about age and maturity, his family life, all those aspects. And it mentions that he had not committed another crime prior to 1992, that it was considered. They weighed them. It's thought out. Now, this is the same judge, Judge Miller, who was presided over and gave Laird the death penalty originally and sentenced to both consecutive and concurrent. I'm sorry, you look like you want to. No, I'm actually thinking about the question about the Arizona Supreme Court's consideration of the mitigating factor of age and maturity. And opposing counsel says that that was limited by the nexus or causation test. But as a statutory factor, I don't necessarily read the Supreme Court's decision that way. And I wonder if you could comment on whether they did or did not feel themselves bound in that respect by the causation question. They weren't bound by the causation section. But there is a statute, 13703G5, that detailed consideration of the age of the defendant. Right, it was a statutory factor. Yes. But I'm asking, I think, in your view, the Supreme Court handled that with regard to nexus or no nexus? They did not consider that factor not substantial because there wasn't a nexus. That his age caused his crime. They considered his age and his maturity.  I'm sorry, the defendant, yes. They considered it independently, in your view?  Okay. And this is so after Roper, Laird needed to be resentenced. It was unconstitutional for him to be sentenced to the death penalty. I don't know what the conversation was between the state and Laird's counsel. But what ended up occurring is that there was a stipulation that he would be sentenced to life with a possibility of parole after 25 years. The statute gave the trial court the option of natural life or life with possibility of parole. And that was the issue, whether the court would accept that. That's when there was a discussion about what was going on, the crime. And he commended defense counsel for bringing up mitigation. And there was mitigation brought up in the initial sentencing. His reference to the consecutive or concurrent, Arizona law gave him the discretion to apply that to all the sentences. And the judge determined that that would not be necessary. When he said the statement, he actually, I circled it here. He said, when I had sentenced him the first time, I may very well have given him, I can't imagine I would have given him concurrent sentences. I don't see any reason to give him concurrent. It's the order that the sentence, court one, run consecutively. And in the sentence imposed on the other counts. The fact that he chose some concurrent, some consecutive, demonstrates there was a discretion. And a reasonable interpretation of this language is that he considered that in making his decision. But he had already considered that, whether or not to exercise his discretion in this case. So that's just the underlying, that Miller requirement. Jones says there has to be a discretionary sentencing structure. Arizona did have that in 92. He was subject to parole for all these crimes. Granted, when they're consecutive, he's not going to be able to get on parole. Although, he has applied three times for parole, but not since his murder sentence, since the 25 years of his murder and sentence has arrived, which I think 2019 would have been the date. Are there any more questions about the Miller aspect? Questions about the LWOP sentence. Yes. So in Moore, the circuit, our circuit, held that a state's distinction between LWOP sentences and aggregate sentences that exceed a juvenile's life expectancy was contrary to clearly established law. Why are we not bound to follow Moore on this issue? Bound. Moore is a non-homicide case. It stemmed from it, and it also, I would argue that aggregate sentences are not clearly established law. You look at individual sentences. But setting that aside, if Moore, you don't have to overrule. Moore is distinguishable because it was all non-homicide offenses. Here, it was a homicide, and the offenses are attached. Just for example, he held this woman captive, the victim captive, hogtied her in a bathroom. He was convicted of kidnapping as part of the homicide. There were other crimes related, all intertwined with the homicide. Things he did after, they were all related. So you can't separate non-homicide offenses and then look at them independently and disregard the Supreme Court's decision about homicide offenses. Counsel, if we were to disagree with you about the applicability of that case, I don't understand that that would automatically mean that you lose if all the other things that you've argued are accepted, that age and maturity and rehabilitation, that all those things, in fact, were looked at under the Arizona statute. And so I guess I'm not sure why you're arguing so hard on that point. It's probably because I misunderstood the question. How would you distinguish Moore? What would be the distinguishing factor? But you're absolutely correct, Your Honor, that Moore would say that Miller applies. And the question of whether or not is clearly established law under these factual circumstances where there is both homicide and non-homicide, does Miller apply? Assuming Miller applies, it's been complied with. Whether or not the underlying question about whether or not a de facto sentence on non-homicide offenses that would be consecutive to a homicide offense and are interrelated, does that fall under Moore's rubric? Arguably not. But it's correct. It's quite honestly sort of a non-issue at this point that the decision does not have to be overturned or you don't have to grant relief because even if Miller applies, I'm sorry, I keep hitting this microphone. I apologize for that. Even if Miller applies, all the requirements have been complied with. But the argument is that Miller does not apply under these circumstances. Are there any other questions? I don't think so. Okay, thanks. I can go down and not hit the microphone anymore. Thank you for your argument, Counsel. Thank you. I'd like to answer Judge D'Alba's question about Moore v. Beiter because here's how I think it applies here. The part of Moore v. Beiter that I'm relying on is the part that says whatever you call this sentence, you know, if it's life without parole, if it's a sentence of 1,000 years, if it's a sentence of 300 years to infinity, but you get parole eligibility after serving half of the minimum term, all of those sentences have one thing in common. They have the fact that there is no opportunity for release on parole during the person's expected lifetime. That is the sense in which I'm relying on Moore's clearly established rule. Can that apply, though, in a homicide case when Moore was a non-homicide case and it talked about and relied on cases like Graham, which were also non-homicide cases? So what I was about to say dovetails with the answer to your question, Judge Desai. All that means if you have a juvenile sentence to life without parole or the functional equivalent of it is that the protections of the Eighth Amendment are triggered. That's where the Arizona Court of Appeals ruled contrary to clearly established federal law. It said the Eighth Amendment doesn't apply. Now what those Eighth Amendment protections are, and this is where I'm getting to your question, Your Honor, what those Eighth Amendment protections are depend on the nature of the crime that the juvenile committed. Because Moore was dealing exclusively with non-homicide crimes, the rule is categorical. You can't sentence a juvenile to that. Do it over. Here, because there is a homicide involved, the rule is the sentencing judge has to have discretion to determine at the outside whether the capacity for rehabilitation should give the juvenile some possibility for release on parole down the line. And because the Arizona Court of Appeals' ruling on whether the Eighth Amendment applies is contrary to clearly established law, the second half of it, like Helm teaches us and as we've been discussing this morning, the second half of that question gets reviewed de novo. And with that, I'll sit down unless there's any follow-up questions. No. All right. Thank you, Your Honors. I'd ask you to reverse. Thank you, counsel, for your argument. That will conclude this morning's session, and this case will be submitted. Thank you. All rise. This court for this session stands adjourned.
judges: GRABER, DESAI, ALBA